*(Criminal Court of Cook County.)*

### The People of the State of Illinois

vs.

### William J. Davis, Thomas J. Noonan and James E. Cummings.

(September 30 and October 4, 1904.)

1. CHANGE OF VENUE FROM COUNTY IN CRIMINAL CASES—TIME OF APPLICATION. Where a petition for a change of venue from the county alleges that there is such a prejudice on the part of the people against the petitioner that he cannot have a fair and impartial trial, and that he did not become aware of such prejudice until September 27, 1904, at some time after 4 p. m., and notice of the application for a change of venue was served at 9:30 a. m. on the following day, it was *held* that the application was made in apt time.

2. CHANGE OF VENUE—CRIMINAL CASES. Where a defendant in a criminal case cannot have a fair trial in the county where he resides or where the offense is committed he is entitled to a change of venue.

3. SAME. Nor is such right affected by the fact that such change of venue would greatly increase the expense of trial to the state.

4. SAME—DUTY OF STATE. If the state's attorney on an application for a change of venue believes that no prejudice in fact exists it is his duty to contest the application. If, on the other hand, he believes that a prejudice does exist he should consent to the making of the change and not charge the court with the responsibility of doing so.

Indictment for manslaughter. Petition for change of venue on the ground of local prejudice. Heard before Judge George Kersten.

Statement of facts.

The defendants were indicted for manslaughter. The defendants Noonan and Cummings filed their respective petitions for a change of venue from Cook county on the ground of the prejudice of the inhabitants. The petition of the defendant Cummings is in the following form:

To the Honorable George Kersten, Judge of the Criminal Court of Cook County:

Your petitioner, James E. Cummings, defendant in the above entitled cause, respectfully presents this, his petition, for a change of venue from said Cook county, because of the prejudice of the inhabitants thereof, and represents unto this court and states the following:

1. That this petitioner now resides, and for more than fifteen years continuously last past has resided in the city of Chicago, county and state aforesaid; that he has been connected in different capacities with various theatres in said Cook county for a great many years last past.

2. That on February 23, 1904, your petitioner was indicted for manslaughter in said above entitled cause conjointly with said defendants Davis and Noonan; and your petitioner refers to said indictment, as aforesaid, and makes said indictment a part hereof; that as appears upon the back of said indictment, one hundred and thirty-eight witnesses were called before said grand jury and gave their said evidence, and, as your petitioner is informed and believes and therefore states the fact to be, said indictment was returned upon the evidence of said one hundred and thirty-eight witnesses, and that most if not all of said witnesses were then and there and now are inhabitants of said Cook county.

3. That, as will more fully appear from said indictment, your petitioner is charged therein with the offense of manslaughter, alleged therein to have been committed in said Cook county on December 30, A. D. 1903, by your petitioner with said defendants Davis and Noonan by reason of the death of the person named in said indictment, and that said crime is alleged in said indictment to have been committed by your petitioner and said defendants on said date last aforesaid, by

reason of the negligence of your petitioner and said defendants in not providing certain appliances and apparatus, alleged in said indictment to be required by the laws and ordinances of said city of Chicago for the safety of persons then and there on said December 30, A. D. 1903, assembled in a theatre then and there alleged in said indictment to have been located in said city of Chicago, and known as the Iroquois Theatre.

4. That it is alleged in said indictment that your petitioner on said December 30, A. D. 1903, and before then, was engaged in the business of stage carpentering of the building in which said Iroquois Theatre was located and of said Iroquois Theatre in said city of Chicago.

5. That it is further alleged in said indictment that a large number of persons were then and there assembled in said building and in said Iroquois Theatre to witness said theatrical performance, to-wit, "Mr. Bluebeard, Jr.," and that at the time of said performance a certain arc lamp was then and there without due caution and circumspection placed near a certain drapery situated on, in and about the stage of said Iroquois Theatre, and that said drapery was then and there ignited and set on fire by said arc lamp; and it is further alleged in said indictment that by reason of the fact that said defendants, as alleged in said indictment, had not complied with said ordinances, said fire was not then and there extinguished and not then and there confined to said stage, and a large amount of fire and smoke then and there poured and went forth from said stage to, towards, against and upon a large number of persons then and there assembled in said building and in said Iroquois Theatre, and against and upon said deceased then and there in said building, and in said Iroquois Theatre, and that by reason of said large amount of fire, smoke, heat, gas and flame, said deceased was then and there asphyxiated, strangled and died.

6. That it is true that on said December 30, A. D. 1903, a fire occurred on the stage of said Iroquois Theatre; that at said time of said fire, a performance of said "Mr. Bluebeard, Jr.," was being produced at said theatre, and that at said time a

large number of persons, consisting of men, women and children, were in said theatre witnessing said performance; that immediately after said fire, it was publicly announced through the papers, and otherwise, throughout said Cook county and throughout the United States, that said fire was a great calamity and that about six hundred lives had been lost by reason of the occurrences at or about the time of said fire in and about said theatre; and that, included among said list of persons, who had lost their lives as aforesaid, was the name of said deceased, mentioned in said indictment.

7. That after said fire, and on, to-wit, January 7, A. D. 1904, one John E. Traeger, then and there the coroner of said Cook county, held a coroner's inquest upon the body of said deceased mentioned in said indictment, and upon about six hundred other bodies then and there stated to have met their death in the way mentioned in said indictment; that said coroner's inquest was held in the council chamber of the common council of the city of Chicago; which said council chamber was then and there a large auditorium with many rows of seats and benches, and in which said council chamber there was a gallery; that the public were admitted to said inquest, and as your petitioner is informed and believes and so states the fact to be, many thousands of persons, inhabitants of said Cook county, attended said inquest and heard the testimony there given; that upon said inquest, as stated by said coroner, between two and three hundred witnesses were subpoenaed to testify, and more than one hundred and seventy witnesses were actually called by said coroner and did then and there testify before the coroner's jury; that said inquest covered a period of, to-wit, twenty days, and that the testimony so taken was published *verbatim* or in substance, in all the daily newspapers published in said county.

8. That said Iroquois Theatre, on December 30, 1903, was a new structure, located at 79 and 81 Randolph street, in said city of Chicago, of beautiful design, and opened to the public for the first time on, to-wit, November 23, A. D. 1903, and prior to such opening was extensively advertised as a new theatre about to be opened, and the residents and inhabitants

of said Cook county were generally aware, as was then and there publicly stated and announced throughout said Cook county by the press, of the opening of said theatre, and the opening of said theatre was a matter of public interest to the inhabitants of said Cook county.

9. That on said December 30, A. D. 1903, and for many months prior thereto and continuously thereafter up to and including the present time, there were and now are duly published in the English language throughout said Cook county, each day, certain newspapers which had the respective circulations among the inhabitants of said Cook county and were respectively read by the number of inhabitants of said Cook county, as follows, to-wit:

| Name of Paper. | Circulation. | No. of Readers. |
| --- | --- | --- |
| Chicago Daily News | 300,000 | 600,000 |
| Chicago Record Herald | 150,000 | 300,000 |
| Chicago Tribune | 150,000 | 300,000 |
| Chicago Inter-Ocean | 60,000 | 120,000 |
| Chicago Chronicle | 50,000 | 100,000 |
| American | 200,000 | 400,000 |
| Examiner | 120,000 | 240,000 |
| Chicago Evening Post | 16,000 | 32,000 |
| Chicago Evening Journal | 100,000 | 200,000 |

10. That immediately after said fire, the mayor of the city of Chicago issued a public proclamation, with reference thereto, deploring the calamity of said fire and directing that a day should be set apart for mourning for the dead hereinbefore referred to, and that business throughout said city should be suspended; that such proclamation was recognized and concurred in by the inhabitants of said Cook county, and immediately thereafter all business in said city of Chicago, in said Cook county, was suspended and such proclamation was generally recognized and observed; and the people of said city of Chicago immediately entered into a state of mourning; and said fire and the death of the great number of people alleged to have been occasioned by said fire was the paramount and all-absorbing topic of conversation by the inhabitants of said

Cook county; and the public press of said Cook county devoted many editions of their respective newspapers to publishing the alleged details of said fire for many days, weeks and months thereafter; and it was publicly iterated and reiterated in said public press that said fire was occasioned and the great loss of life alleged to have been attendant thereon was alleged to have been occasioned by the negligence of your petitioner and other parties alleged to have been connected with the management and ownership of said building and said Iroquois Theatre.

11. That immediately after said fire the hospitals and morgues in said Cook county, as was alleged in the public press of said Cook county and believed by the inhabitants of said Cook county, were filled with the dying and dead alleged to have come from said theatre building and said theatre, and many tens of thousands of people congregated for days after said fire at said morgues and hospitals, and many other thousands of people congregated at the newspaper offices in said Cook county and at the police and fire headquarters in said Cook county, and the inhabitants of said Cook county were wrought up to a high pitch of excitement, lasting many days, weeks and months after said December 30, A. D. 1903, and a great and popular prejudice was then created in the minds of the inhabitants of said Cook county against your petitioner and against other persons connected with the said Iroquois Theatre and said building wherein said theatre was located, and that public sentiment became so great and strong that the mayor, the building commissioner and the fire marshal of said city of Chicago, together with others, were held to the grand jury of said Cook county by said coroner's jury, and that thereafter, and on said February 23, A. D. 1904, said building commissioner and one of his chief assistants were indicted by the grand jury of said Cook county for alleged culpable negligence in their conduct in connection with said building.

12. That a great number of civil suits have been instituted and are now pending against the Iroquois Theatre Company and persons connected therewith, and against several public officials charged with negligence causing said fire, and the in-

stitution of said suits has been greatly discussed and heralded throughout said Cook county as a matter of public interest.

13. That immediately after said fire, there was formed in said city of Chicago an association or corporation, publicly known and designated as the ''Iroquois Memorial Association;'' that said association has been continuously publishing and circulating great quantities of literature, in which they have directed the attention of the inhabitants of said Cook county to your petitioner and to the other persons alleged to have been connected with said theatre and said building as aforesaid, and in which they have charged your petitioner and said other persons with gross negligence, carelessness and wilful intentions, and in which said literature they have claimed that your petitioner and others were guilty of occasioning the great loss of life alleged to have resulted by reason of said fire as aforesaid; that ministers from their pulpits in said county have publicly denounced the persons alleged to have been connected with the management of said theatre and said building as aforesaid, including your petitioner; that school teachers throughout said Cook county have frequently since said fire formed societies in and among the children attending their respective schools, for the purpose of constantly creating, and such associations do constantly create, a prejudice in the minds of said children and in the minds of the parents of said children, inhabitants of said Cook county as aforesaid, against persons alleged to have been connected with the management of said theatre and said building as aforesaid, including your petitioner; that your petitioner, together with the persons alleged to have been connected with the management of said theatre and theatre building, have frequently been referred to, in the public press of said Cook county, as murderers and felons, and said public press of said Cook county has frequently demanded that your petitioner be punished for the alleged death of said persons as aforesaid; that said public press has frequently referred to the fact of the alleged violations of the city ordinances of said city of Chicago, pretendedly set forth in said indictment, and has directed the attention of the inhabitants of said Cook county

to such alleged violations, and have stated, on their own responsibility, that such violations existed, and that such violations were criminal, and that said theatre was not constructed, maintained or operated according to the ordinances of said city of Chicago.

14. That on said December 30, A. D. 1903, there were from twenty-five or thirty operating theatres in said city of Chicago, and that immediately after said fire, as aforesaid, and on, to-wit, January 1, 1904, Honorable Carter H. Harrison, then and there the mayor of said city of Chicago, ordered each and every one of said theatres to shut down and remain closed, and said theatres did for a long time thereafter shut down and remain closed; that prior to said December 30, A. D. 1903, more than twenty thousand persons were in the habit of visiting said theatres daily, and that more than, to-wit, ninety per cent. of said people so visiting said theatres were and now are inhabitants of said Cook county; and that the mayor of said city of Chicago, in ordering said theatres to close and in closing said theatres as aforesaid, publicly announced, and such announcement was circulated throughout said Cook county in the public press, that said theatres were closed and shut down for the reason that said theatres were violating the ordinances of said city of Chicago, and said mayor and other officials of said city of Chicago then and there directed the attention of the inhabitants of said Cook county to the alleged violations of said ordinances by the said persons alleged to be connected with the management of said Iroquois Theatre and said building as aforesaid; that by reason of such facts, the attention of many hundreds of thousands of inhabitants of said Cook county was directed to the alleged violations of the ordinances of said city of Chicago set forth in said indictment.

15. Your petitioner particularly refers to and herewith brings into court several editions of said newspapers hereinbefore referred to which were printed, published and circulated throughout said Cook county, between the dates of December 30, A. D. 1903, and January 29, A. D. 1904, both inclusive, and particularly refers to each and every part of said

newspaper and makes such parts of said newspapers a part of this, his said petition, for a change of venue with the same force and effect as if your petitioner had set forth said parts of said newspapers in this, his said petition, referring to said Iroquois fire and your petitioner and the alleged owners, managers and operators of said theatre and said theatre building, and to such parts of said newspapers referring to any of the facts hereinbefore stated.

16. That said prejudice had apparently died out at the time of the indictment on February 23, A. D. 1904, and until September 19, A. D. 1904, and upon said latter date said Iroquois Theatre was again opened for amusements, whereupon the public protests against the opening of said Iroquois Theatre by the press of said Cook county and by ministers, school teachers, school children and by others, recalled the horrors of said fire and aroused the passion and revived the prejudice of the inhabitants of said Cook county against those connected with said theatre, including the petitioner.

That the reopening of the Iroquois Theatre and the agitation attendant thereon were given wide publicity throughout said Cook county; that immediately upon said reopening and thereafter up to and including the present time, the occurrence of said fire and the great loss of life attendant thereon, and the surrounding facts and circumstances have been again agitated and republished, and brought again to the attention and knowledge of the inhabitants of said Cook county, and in addition thereto the state's attorney of said Cook county at certain public gatherings, including relatives of those whose lives were so lost, has been charged with dereliction in not convicting said defendants herein, and that a great prejudice against said defendants has again been occasioned and is now in the minds of the inhabitants of said Cook county.

17. That your petitioner particularly refers to and herewith brings into court several editions of said newspapers hereinbefore referred to, which were printed, published and circulated throughout said Cook county on September 20, A. D. 1904, the day after the re-opening of said Iroquois Theatre and building as aforesaid, and the edition of the Chi-

cago Inter-Ocean of Sunday, September 25, A. D. 1904, and particularly refers to each and every part of said newspapers and makes said parts of said newspapers a part of this your petitioner's said petition for a change of venue, with the same force and effect as if your petitioner had set forth such parts of said newspapers in said petition referring to the Iroquois fire and to the prosecution of your petitioner and the other defendants herein and the re-opening of said Iroquois Theatre as aforesaid.

18. Your petitioner further states that this petition is made at the first opportuniy since the knowledge of the existing prejudice of said inhabitants of said Cook county came to this petitioner, and that knowledge of the existence of said prejudice first came to this petitioner on the 27th day of September, A. D. 1904; that at the time petitioner was indicted as aforesaid, said publications in said newspapers practically ceased and public excitement was apparently over, and that after petitioner was indicted he believed that without any renewed agitation of the matters and things herein set forth in connection with said fire he could, without prejudice to his rights to obtain a fair and impartial trial, submit to a trial in said Cook county; that although said defendants were indicted on said February 23, A. D. 1904, the state's attorney of said county did not as against petitioner move to place said case on trial until September 26, A. D. 1904, and this petitioner or his counsel had no notice whatever of said move or that said case was to be called for trial, until September 26, A. D. 1904; that thereupon petitioner, by himself, numerous friends and associates at once instituted extensive inquiries among the inhabitants and citizens of said Cook county for the purpose of ascertaining whether such a prejudice now exists against said petitioner among said inhabitants of said Cook county as to prevent petitioner from obtaining a fair and impartial trial in said Cook county, and your petitioner further avers as the result of such inquiries as aforesaid he, for the first time since the indictment herein believed on September 27, A. D. 1904, that such a prejudice exists against him among said inhabitants of said Cook county that he can-

not in said county obtain a fair and impartial trial, and that knowledge of such prejudice first came to petitioner on said September 27, A. D. 1904.

Wherefore, the premises considered, your petitioner prays for a change of venue from the criminal court of said Cook county.

And your petitioner will ever pray.

JAMES E. CUMMINGS.

State of Illinois, ) ss.
County of Cook. )

James E. Cummings, being first duly sworn, upon oath deposes and says that he has read the above and foregoing petition by him subscribed, and knows the contents thereof, and that the contents of said petition, and the allegations and facts therein stated, are true in substance and in fact.

JAMES E. CUMMINGS.

Subscribed and sworn to before me, a notary public of Cook county, Ill., on this 28th day of September, A. D. 1904.

[Seal.]                    EUGENE A. MORAN,

Notary Public, Cook County, Illinois.

A similar petition was filed by Thomas J. Noonan.

Many thousands of affidavits were filed to show the existence of prejudice. No counter affidavits were filed by the state. The state finally conceded that prejudice did in fact exist and withdrew its objection to the granting of the change of venue. The affidavits were in the following form:

———— ————, being first duly sworn, upon oath deposes and says that he now is and for more than a year last past has been a resident, inhabitant and citizen of said Cook county, in said state of Illinois, and that he now resides at ——— in the city of Chicago, in the county and state aforesaid, and that his occupation is that of ———.

That he is not of kin or counsel to any or either of the defendants herein; that said defendants herein were indicted in the criminal court of said Cook county on February 23, A. D. 1904, for manslaughter alleged in said indictment to have been occasioned by a fire which occurred on December 30,

A. D. 1903, at a place in said city of Chicago known and designated as the Iroquois Theatre.

That immediately after said fire it was universally reported and the inhabitants of said Cook county believed that a great number, to-wit, more than six hundred lives were lost at said fire; that by reason of said great numbers of deaths and the statements contained in the public press which were circulated in said Cook county, and by reason of the indictment herein, and of the indictment of divers public officials of said city of Chicago because of the facts and circumstances arising out of said fire, and by reason of the closing of all the theatres in the said city of Chicago, on, to-wit, January 2, A. D. 1904, and the same being kept closed for several months by order of the mayor of said city and by reason of statements made by members of certain memorial associations, which statements were printed, published and circulated throughout said Cook county, a very great and popular prejudice arose in the minds of the inhabitants of said Cook county against the defendants herein and against other persons connected with said Iroquois Theatre and against said theatre, and that by reason of all such facts a great popular prejudice and clamor arose in the minds of the inhabitants of said Cook county against said defendants herein.

The said prejudice had apparently died out at the time of the indictment on February 23, A. D. 1904, and until September 19, A. D. 1904, and upon said latter date said Iroquois Theatre was again opened for amusements, whereupon the public protests against the opening of said Iroquois Theatre by the press of said Cook county and by ministers, school teachers, school children and by others, recalled the horrors of said fire and aroused the passion and revived the prejudice of the inhabitants of said Cook county against those connected with said theatre including the defendants herein.

That the reopening of the Iroquois Theatre and the agitation attendant thereon were give wide publicity throughout said Cook county; that immediately upon said reopening and thereafter up to and including the present time, the occurrence of said fire and the great loss of life attendant thereon,

and the surrounding facts and circumstances have been again agitated and republished, and brought again to the attention and knowledge of the inhabitants of said Cook county, and in addition thereto the state's attorney of said Cook county at certain public gatherings, including relatives of those whose lives were so lost, has been charged with dereliction in not convicting said defendants herein, and that a great prejudice against said defendants has again been occasioned and is now in the minds of the inhabitants of said Cook county, and this affiant believes and says that said defendants, Noonan and Cummings, will not and cannot receive a fair and impartial trial in the criminal court of said Cook county in which the case herein is pending, because the inhabitants of said Cook county are prejudiced against said Noonan and Cummings and each of them.

And further affiant saith not.

The motion for a change of venue was thereupon granted and the case was transferred to Peoria county. The court rendered two opinions: one on September 30, 1904, and the other on October 4, 1904.

*Charles S. Deneen,* state's attorney, *A. C. Barnes* and *E. C. Lindley,* assistant state's attorneys for the people.

*Levy Mayer, Alfred S. Austrian, Moritz Rosenthal, W. J. Hynes, E. C. Higgins* and *Howard O. Sprogle,* for the defendants.

Opinion rendered September 30th, A. D. 1904.

KERSTEN, J.:—

This is a motion on the part of the state to deny the petition for a change of venue on the ground that it is not made in apt time. That is the sole question under consideration, and not the question, shall a change of venue be granted even at this time? Much of the argument has been unnecessarily addressed to the latter proposition. The question is, was the petition presented or filed in apt time? The state has denied that the application for change of venue was made at the earliest opportunity, and that the state's attorney's office did

not receive the requisite legal notice, and that therefore the petition should be denied.

The state has abandoned the latter proposition, thus leaving the first open to be passed upon.

The petition recites that there exists at the present time such a prejudice on the part of the people of this county against the petitioner that he fears that he cannot have a fair and impartial trial in this county and that he did not become aware of said prejudices of the people of said county against him until September 27th, 1904, at some time after four p. m. It has been shown that notice was served on the state's attorney about 9:30 a. m. on the next day, that the petitioner was about to apply for a change of venue.

If it is true that the petitioner had no knowledge of the existing prejudice against him on the part of the people of this county until the 27th of September, 1904, at four p. m., the latter having served notice at 9:30 a. m. on the next day upon the state's attorney of his intention to pray for a change of venue, then he has fulfilled, I think, the requirements of the statute.

The court has no other legal evidence upon this proposition than that which is disclosed by the petition itself. The petition technically fulfills the requirements of the law and shows *prima facie* that there exists such a prejudice on the part of the people of this county against the petitioner that he cannot receive a fair and impartial trial in this county and that he did not become aware of this prejudice until the evening of September 27th, 1904. It is also shown that on the next morning at about 9:30 o'clock he served notice on the state's attorney of his intention to pray for a change of venue.

The facts stand uncontradicted, and therefore must be accepted as true.

The motion to dismiss the petition is denied.

Opinion rendered October 4, 1904:

KERSTEN, J. :—

Before granting this change of venue, I desire to say this: This is a very important matter, much more important than any matter that has arisen in this court for a long time. Un-

der the law, if a defendant cannot have a fair trial in the county where he resides or where the offense was committed, he is entitled to a change of venue. There is no question in regard to that. When these defendants filed their petition asking for a change of venue it was contested by the state, it was bitterly contested, I might say up to this morning. Suddenly the state ceases to contest this application for a change of venue, first on the ground of expense, secondly on the ground that the state did not know just what number of affidavits the defendants would bring forward.

Now, so far as the expense is concerned, the matter is so important that no expense should prohibit the state in any way, shape or manner from contesting this petition for a change of venue if the state is of the opinion that there is not such prejudice which would justify this court in grant- ing a change of venue.

Mr. BARNES: And if it can get the money to do so.

THE COURT: The money should be there.

Mr. BARNES: But it is not.

THE COURT: That is absolutely no excuse.

Mr. BARNES: Well, it is not there.

THE COURT: I will say to the state that the reason I make these remarks is that I am being put in a false position in granting this change of venue, if I do grant it, which of course, the petition not being contested, I am compelled to do. There has been some newspaper talk, I do not know whether it came from the state's attorney's office or not, which in a manner brought the burden of granting this change of venue upon this court. Now, I wish to say that I am acting in this matter as I will in every matter that comes before me, strictly in accordance with the law, and I want to do justice in this case, as I will in every case, as I see it. If I am mistaken about any proposition, that is a different question. But as I said before, if the state is of the opinion that there is no prejudice existing in this county it is the duty of the state to contest this petition, it was the duty of the state to file counter affidavits, and not say, "well, the court has ruled against us on the preliminary petition, and if you have all these affidavits we won't contest it because the court will prob-

ably grant the change of venue anyway.'' In doing that the office of the state's attorney is not acting in good faith.

MR. BARNES: Has the state's attorney said that?

THE COURT: Not in so many words.   *   *   *

THE COURT: I don't care to say anything more on that subject. It is sufficient to say that already cranks have commenced to write letters, one of which I received this morning, which was threatening in the extreme, and stated that if I granted a change of venue in this case I might look for a vigilance committee or something of that kind. Not only could things of that kind be averted, if the state's attorney would come right out and say there is no prejudice in this county and we will contest the change, or say, ''well, gentlemen, it seems to me that there is prejudice in this county and we will not contest it.'' That would be the manly way of treating a matter of this kind.

MR. LINDLEY: It was not until after the affidavits were presented that we could have any conception of the prejudice which they say exists.

THE COURT: There is no rule of law compelling any living man to produce his testimony beforehand. This is an issue of fact that is tried in the same manner as any other issue, and no court would have the right to say to the plaintiff, ''Mr. Plaintiff, I want to know what kind of evidence you have on which you base your claim; I want to know how many witnesses you have whom you intend to introduce; I want to know the nature of the evidence on which you will depend, any more than the court would have the right to ask the defendant similar questions. It is an issue of fact that this court and any other court would be bound to hear whatever evidence, proper legal evidence, either litigant would bring forth.

MR. LINDLEY: Wasn't it announced by the state's attorney most promptly, when the number of affidavits was stated, that he believed too that the change should be granted?

MR. MAYER: The state's attorney in his argument stated to the court that every county in the state was prejudiced, and I advanced that as one of the reasons why a change of venue should be granted.